317-0315, people who say that Bill Nye will be like Monroe Clayton, that's a comment by James Wozniak. May it please the Court, Counsel. My name is James Wozniak. I am from the State Appellate Defender's Office, and I represent the appellant in this matter, Monroe Clayton. Monroe Clayton, a paraplegic man with limited use of his hands confined to a wheelchair during his trial, was not present in the judge's chambers when two jurors were questioned regarding one of those jurors' alleged lack of attentiveness during the trial up to that point. Mr. Clayton was thus not able to assist his attorney in questioning those jurors, observe those jurors as they were being questioned, or hear the trial court's instructions regarding those jurors. And ultimately, the alleged sleeping juror was removed from Mr. Clayton's jury and replaced with the very alternate juror who had first alerted the court and the parties about the dismissed jurors' inattentiveness. And while Mr. Clayton's lack of presence was air, the most harm that was caused to Mr. Clayton is that the juror was dismissed as he was being questioned by the court, had expressed his thoughts about the State's case at that point. And it was after that point when the State moved to have that juror removed for cause. That removal of that juror denied Mr. Clayton his right to a unanimous jury verdict. On the fourth day of trial, this trial took place over, I believe, about seven days, and one of the reasons was Mr. Clayton's health issues. He was confined to a wheelchair, paraplegic, had limited use of his hands, had a nurse that was attending him at all times during the trial. There was often breaks that he had to take, and the trial started in the afternoon on each day. On the fourth day of the trial, a juror alerted a bailiff who then alerted the court that there was a juror that was, in her opinion, not being attentive during the trial. That alerting juror was first questioned in judges' chambers without Mr. Clayton's presence. The alleged sleeping juror was questioned in the judges' chambers without Mr. Clayton being present. The prosecutor did not move to remove the sleeping juror after the complaining juror was questioned, after the judge had told the parties to keep an eye on that alleged sleeping juror. It was only after the juror was questioned and he expressed some of his thoughts on the state's case, essentially what he stated was he did not believe there was much evidence up to that point except for DNA evidence. Otherwise, I believe he said some of the things seemed repetitive to him, and there did not seem like much evidence. It was after that point that finally the state asked for the juror to be removed, and eventually the court did remove him for cause over the objection of defense counsel. For a violation of a unanimous jury verdict, all Mr. Clayton has to show is that there was a reasonable possibility that the impetus for the juror's dismissal stemmed from the juror's thoughts or views on the merits of the case. And that's the Galano case that's cited in my brief and reply brief. If that's the case and that occurs, the court can't dismiss that juror. However, if for some reason the court feels that that juror can't serve for whatever reason, then the remedy has to be is not to promote an alternate juror in replacing of that dismissed juror. It is to declare mistrial, and that's what, again, the Galano case says. There's a myriad of Federal cases that I've cited that also stand for that same proposition. There's a factual difference, I will agree, in those cases as in for this case here, is in all of those cases, the thoughts that the juror had on the case occurred after deliberations had begun. In Galano, the Illinois case, and the Federal cases. Here, the thoughts of the juror became known before deliberations had begun, I believe on the fifth day of the trial. But none of those cases say that the holdings or the legal principle of those cases would not still apply here. We're going to learn about a juror's thoughts on the case most often during deliberations, because that's when jurors are going to send a question. Or in the Galano case, it was the juror himself who said that he was the one that was a holdout juror. And it was at that point the state decided to investigate that juror, found that he had lied about his criminal history during voir dire, and moved for him to be removed, which the court granted, and then promoted an alternate juror to take his place. And the Galano case said that was a denial of the constitutional right to be made in this jury verdict, because the impetus for the state to remove him was because of the thoughts on the merits of the case. And here, that's what this juror did. Now, the court didn't solicit the information, didn't directly ask him. No one did. He volunteered it on his own, but he volunteered it after he was brought back and questioned by the court. Mr. Clayton was also denied his constitutional right to be present at the hearings and the questioning of these jurors back in the judges' chambers. Again, it was the fourth day of trial when the first juror alerts the court as to the potential sleeping juror. The court says in open court, with a jury not present, that we're going to go back and talk to that juror back in chambers. Asks the counsel, while Mr. Clayton is present, is it okay that your client is not here? Everyone says yes. Mr. Clayton is not directly asked by the court. They go back and they question that juror. And Mr. Clayton is not there. The following day, there's a discussion again where they go back in chambers. At this point, again, his attorney says my client's presence is a waive. Mr. Clayton is not directly asked by the court whether or not he agrees to waive his presence. And there's a discussion about the observations of the sleeping juror, and the court says, hey, keep an eye on this juror. I take it that's at the end of the fourth day. On the fifth day is when then the sleeping juror, the alleged sleeping juror, is brought back. And at this point, there is no discussion at all in open court. The court says we're going back into chambers, does not indicate as to why. Then while they're back in chambers and Mr. Clayton is not there, says, do you waive your client's presence? And his attorney says yes. As the cases I cite, this is Mr. Clayton's right to waive his presence, not his attorney's right. And, again, this is a man that's confined to a wheelchair. He has no use of his legs, extreme limited use of his arms, attended by a nurse, has to take frequent exits from the courtroom to attend to bathroom needs and other medical needs. And the court never directly asks him, do you waive your presence to be there? And there's also no clear reason given other than I believe the prosecutor is saying let's not question the first juror in front of anyone. But the jury and the rest of the people aren't in there, so I don't know why the court wouldn't have cleared out the courtroom to allow Mr. Clayton to remain in the courtroom to hear what was going on. And the court gave specific instructions for the parties to observe this juror. Also went before to bring him back in the next day, said, submit written questions to me that you can pose. Mr. Clayton was not present for any of these conversations. So Mr. Clayton not being present, he was unable to assist his attorney in the questioning of his jurors, and that ultimately led to one of the jurors who questioned the strength of the state's case being dismissed. What I've argued in the second argument is to reach this issue because the first issue was preserved in terms of the juror being removed that was objected to by trial and brought up in the post-trial motion. Mr. Clayton's presence was not obviously his attorney agreed to waive his presence and didn't bring it up in a post-trial motion as error. No. He just says, I waive my client's presence. On, again, the fourth day of trial, when he says it the first time, which is the beginning of the day, and the second time at the end of the day, when he says, I'm waiving his presence, Mr. Clayton's present in the courtroom when he says that. On the fifth day, when they talk to the juror that's dismissed, he says, I'm waiving my client's presence when they're already back in chambers, and Mr. Clayton is not present. No. Does not ask Mr. Clayton directly whether or not he waived his presence to be at any of those hearings back in chambers. This error can be reached by this court under a plain error analysis, and what I've argued is a first-pronged plain error analysis is closely balanced. I'm not arguing that the evidence of the case was close. I'm arguing that the evidence of this particular hearing or the hearings that resulted in the dismissal of this juror for cause was close. Do you have any authority for limiting that? The authority, the most akin authority or relevant authority is first-pronged plain error in a sentencing scenario is the case that I don't remember. I'm sorry, Your Honor, the name of the case, the Supreme Court case, where closely balanced can be looked at in a sentencing, and this was a death penalty case. What plain error and closely balanced in the first prong says is that it's an error that may have resulted  in the dismissal of Mr. Clayton. And here, this is an error where the very makeup of the jury that sat in judgment of him and deliberated was affected by the error. The juror who said something to the effect of, I don't think the State has presented much evidence, I think there's repetitious evidence, was the one that was removed, and thus could have affected the verdict because that juror did not sit and deliberate and render a verdict in Mr. Clayton's case. Mr. Clayton's attorney objected to the removal of the jury. Correct. Correct. Multiple times at every opportunity. So what could Mr. Clayton have done that his attorney didn't do? In what regard, Your Honor? In terms of objecting to the removal of the juror. Well, his attorney objected to the removal and made arguments, I think, to the extent that he could submit even case law and the court remove the juror, right? I guess, but what would his presence have changed? His presence could have, because the court gave specific instructions to the parties and the attorney, one was after the complaining juror was questioned, keep an eye on the juror that might be sleeping, and then also you can submit written questions to me that I can give to this juror once I question him. Well, obviously his attorney is going to be in the midst of doing a trial, so Mr. Clayton's in a position to observe the jury, and if he knows of these specific instructions from the court, that I should be observing the juror, because there's nothing in the record that Mr. Clayton was apprised of anything that occurred back in chambers. So Mr. Clayton may not even know that he's supposed to be, that there's a potential juror that there is an issue for that might be sleeping or is on the cusp of being removed. And his observations and hearing those instructions to observe that juror and what questions he could pose, or give to his attorney to pose, may have assisted in giving the court a different outlook and possibly saying that this juror should stay on. Because again, this juror, yes, he admits he dozed off, he fell asleep at times, but he said he didn't feel he slept for very long, it was very intermittent, he felt he hadn't missed any evidence. And up to the point he was questioned, based on the complaining juror, the observations from the court that the court shared with the parties, and the observations of the prosecutor, the prosecutor even said, I don't think there's enough to remove this juror for cause. It was only after this juror was questioned when the state finally moved to have him removed for cause. Yes, he did say I had fallen asleep momentarily, but he also made a comment about what he felt the value of the state's case was up to that point. That he didn't, again, think there was much evidence other than the DNA, and that much of the evidence was repetitive. So if there's any other questions from the Court, we'd ask that this Court find that error occurred, that Mr. Clayton was denied his right to a unanimous jury verdict, denied his right to be present, and we'd ask that this Court reverse his convictions and remand this matter for further proceedings. Thank you, Mr. Whitman. Mr. Rothson. May it please the Court. The defendant claims that a seated juror, Mr. Porto, was dismissed only after he expressed doubt about the people's case. The first alternate juror, Ms. O'Connor, raised a concern about Porto being asleep and inattentive to the evidence during the trial. She was interviewed before the third afternoon session of trial, and after that, the judge also said that he had seen Porto sleeping, including during what appeared to be during the opening remarks, even. The prosecutor then stated, I don't want a sleeping juror on this jury. Porto was interviewed after the third afternoon session of trial. They didn't have morning sessions, as you may recall, because of the treatments for the defendant's medical condition at that time. And with no question pending, Porto volunteered that he did not think the people had presented much evidence other than the DNA evidence at that time of trial. The people did not move to dismiss Porto for cause at this time. And Porto made this statement before the people had presented all their witnesses and before any of the exhibits had been admitted to trial. The defendant admitted in his main brief, quote, Mr. Porto in no way indicated he had already made up his mind about defendant's guilt or innocence. The defendant's claim on appeal is contrary to his own admission. The defendant relies on the Colano case, but that case is factually distinguishable. In Colano, the people conducted a background check on a juror who was the lone holdout during deliberations, and the prosecutor admitted that this fact was the motivation for a background check that showed that this particular phase of trial had ended before Porto was dismissed, but the jury was not deliberating yet. Unlike in Colano, nothing in the record of this case shows Porto was predisposed to find defendant not guilty. The only concern raised by any other juror, the judge, or the prosecution was that Porto had been sleeping and inattentive during trial. Defendant Romola claims that under Colano, the trial judge only had two options, to deny the motion to dismiss Porto or to declare a mistrial, but those two factors came out when the jury was already in deliberations and a motion was made. In Colano, and this court also had a Bosman case, I believe it was called, and it relied on the jury was deliberating and the identity of the one holdout juror became known during deliberations. Under the facts of this case, the trial judge properly exercised a third option and replaced Porto with O'Connor prior to deliberations in order to assure a fair trial. The people moved to dismiss Porto only after Porto had been sleeping during portions of the trial and after the bailiff came back and reported that another jury told Porto not to fall asleep when he returned into the jury room after his interview. People were concerned only about Porto's sleeping and his lack of attention to the evidence. Any thought Porto expressed about the evidence during his interview was immaterial where the evidentiary phase of trial had not been concluded and was far from over at that time. And importantly, Porto was not discharged at the time of the people's motion. Instead, the trial judge asked the parties to keep an eye on Porto to see if he appeared to be sleeping during the rest of the trial. The jury has a responsibility to wait to be given testimony to resolve conflicts in the evidence and to draw reasonable inferences from the evidence. The trial judge preserved defendant's right to a fair trial by replacing Mr. Porto because he could not meet those responsibilities since he had been sleeping. In the second issue, defendant claims his right to be present was violated when he was not present in chambers during the interviews of Porto and O'Connor, and he did not waive that right. But defendant did not contemporaneously object to his counsel's claim that his presence is waived. Defendant did not ask to be present at the interviews, and he did not raise his claim in a post-trial motion. Therefore, he's forfeited this issue. Of course, he asked for a plain error of view. The defendant claims the evidence the trial judge used to dismiss Mr. Porto was close. But defendant misconstrues the closely balanced prong to apply to the information elicited during Porto's interview, which was not sworn testimony. There is no authority that the people know of that applies the closely balanced prong to non-trial evidence. The Sebi court said the first prong claim regards whether the evidence presented at trial was close. The Thompson court said the first prong of plain error, quote, requires a finding that the evidence is so closely balanced that the guilty verdict may result from the error. And in his reply brief, defendant quotes Herron, which said the first prong applies where the evidence in a case is so closely balanced that the jury's verdict may have resulted from the error. Defendant does not claim that the evidence presented at him in trial was closely balanced. Therefore, defendant has failed to prove the first prong of plain error. Defendant has not shown that trial judge dismissal of Porto was error. He's not made any argument that the evidence presented at trial was closely balanced, and he has not argued to second prong of plain error at all. Therefore, this Court should reject defendant's request for plain error review. Does this Court have any questions of me? No. I thought that both you and the defendant indicated in your briefs that the judge asked or presented to the lawyer that he wanted to take the lawyer back and leave the defendant in the courtroom in front of the defendant and that the lawyer waved the defendant's right there, but the defendant didn't respond. I don't know if I've been very articulate in saying that, but do you remember anything like that happening? Well, the way I recall things from reviewing the case is there was a point at which the judge said, are you waving your client's presence? But as far as your question about whether going into chambers or staying in the courtroom, is that the focus? Right. With the defendant in the courtroom. There was a discussion about whether to stay in the courtroom or to do this more privately in the encounter, in the chambers, and they finally decided it would be better to, instead of closing down the courtroom completely, just to move that set of interviews into the chambers so it would be less effective, you know, have less effect. The defendant didn't wave his right to be there. The defendant didn't object to the attorney's statement that the defendant waved. The defendant did not object. That wasn't an issue in the courtroom discussion. No, the defendant never objected to anything. He didn't request presence for the interviews. He did not object to doing the interviews in camera. Did the lawyer wave the defendant's presence in front of the defendant in the courtroom? Yes. He did? Yes. Except on the last occasion. Oh, on the second occasion you mean? Wasn't there a third time? There were only two interviews, one with Ms. O'Connor initially where she made her claims that he had been sleeping. In the second interview, they went ahead and did that complete afternoon session of trial and then they interviewed Mr. Corto after trial on that same day. But there was one where the defendant's presence was waved by his attorney while they were in chambers. Is that correct? Not that I recall, Your Honor. You may be correct, but I don't recall that. Okay. I think that's all the time the jury has for us. Mr. Bresnik, do you recall that happening in the courtroom? Yes, Your Honor. I figured because of the multiple days of trial that the facts are important in this case, so. . .  On April 20th, 2017, which looked like was the fourth day of trial, it was in the morning when Ms. O'Connor was eventually questioned in court. And while defense counsel, he's got two defense counsel, the prosecutor in the court and the defendant are in the court, it's the defense counsel, one of his defense counsels suggests for some reason to bring her into the chambers. Again, if my recollection is because of not, he says, bring her out in front of all of these people, but I don't know who all these people would be other than the people who are going to go back in chambers and the defendant. The court asks, is this agreeable to everybody and every attorney? The two defense counsel prosecutors say yes. The defendant is not personally asked and he does not respond at that point. Ms. O'Connor's questioned. At the end of the day, on that day of trial, the court, while the defendant is present in the courtroom, asks the attorneys to go into chambers, but does not say what reason they're going back into chambers. Asks again, the attorneys, is your client's presence waived? While again, the defendant's in the courtroom and his attorney says yes. On the fifth day of trial, the next day when the dismissed juror is questioned, the judge says in the open court with defendant present, we're going into chambers, but does not say why. And then while they're in chambers with the defendant not being present, asks counsel, is his presence waived? And his counsel says yes. So on that, and that's the April 21st, which I would say is the fifth day of trial, is when he asks counsel, is his presence waived? Yes, but defendant's not even there to hear. Outside the presence. Outside the presence. He did ask that question. Yes. He asked the counsel both times while. In front of the defendant. Correct. He did not ask the defendant directly, but the defendant was present. Yes. And to the, I guess the point I would make about the, Mr. Porto's comments about the evidence of the case, and again, all the other cases where this has been deemed an error has happened after deliberations has begun. But I can envision a situation as jurors are often sent for recess or lunch or whatever, where a juror makes a comment, the evidence isn't even done yet, says, whew, the State's case is sure weak on this one, or I don't believe that victim. Doesn't mean that they're necessarily making a decision on the case that they've said, I'm going to find the person not guilty or guilty, but they're questioning the merits of the case. And that's what the Galano case and the other cases say is, again, questioning the merits of the case. Because in Galano, the remedy would have been twofold, is what the Galano court said, mistrial or allow that juror to continue deliberating. If they ultimately come back and say it's, we're a hung jury, it's a mistrial, then so be it. But maybe that juror goes back for further deliberations and is convinced and is no longer a holdout juror. But they express their views on the merits of the case, and then is there a reasonable possibility that the impetus for the removal is because of that. I agree with the State is that this is a hearing where Mr. Porter is being asked a lot of questions, and he blurts this comment out in the middle. And it's not directly after that that the State says, we want to remove him for cause. There's some other questions going back and forth because the courts still question him. But it's at the end of that hearing where finally the State says, we want him removed for cause. And before that point, based on their own observations, the court's observations related to the prosecutor and Ms. O'Connor's observations and her questioning, the State explicitly said, I don't think there's enough at this point to remove him for cause. So it was what he said in that hearing that tipped the prosecutor over off to say yes. Is the State going to argue it's because he admitted to sleeping and dozing off? But he also expressed his views on the merits of the case. And is now there a reasonable possibility that's the reason, I would say yes. So precisely what he said again. He makes two comments, if I recall. The one paraphrases that, I don't think there's been much evidence or as much as other than the DNA, is how he qualifies that statement. And then he says something to the effect of that a lot of the evidence seemed repetitive to him. So those are the two comments he makes, actually, about the evidence and the merits of the case. Is there any other questions from the Court? Again, Your Honors, we ask that you reverse Mr. Clayton's conviction. We'll be in this manner for further proceedings. Thank you. Thank you, Mr. Berthe. And thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition within a short day. Thank you.